Filed 7/2/26  P. v. Jones CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>　　　v.<br><br>FREDDIE HOWARD JONES, JR.,<br><br>　　　Defendant and Appellant. | B342348<br><br>(Los Angeles County Super. Ct. No. TA088018) |

　　　APPEAL from an order of the Superior Court of Los Angeles County, Sean D. Coen, Judge.  Affirmed.

　　　Maggie Shrout, under appointment by the Court of Appeal, for Defendant and Appellant.

　　　Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Kenneth C. Byrne, Supervising Deputy Attorney General, and Allison H. Chung, Deputy Attorney General, for Plaintiff and Respondent.

Defendant Freddie Howard Jones, Jr., (defendant) and several co-defendants were tried for murder in 2008. A jury found two of the co-defendants guilty of premeditated first degree murder and found defendant guilty of second degree murder. Many years later, defendant filed a petition for resentencing pursuant to Penal Code section 1172.6 (former section 1170.95).[1] The trial court denied the petition at the prima facie stage without issuing an order to show cause. Defendant asks us to decide whether this was error because he could have been convicted on a "theory under which malice is imputed to a person based solely on that person's participation in a crime." (§ 1172.6, subd. (a)(1).)

## I. BACKGROUND

### A. The Offense Conduct

In June 2003, defendant and several fellow members of a local criminal street gang gathered near a Compton apartment complex that served as one of the gang's "stronghold areas." The other gang members included Shawney Jackson (Jackson), Jamie Cox (Jamie), and Christopher Johnson (Johnson). Also present were defendant's girlfriend, Nakiea Larkin (Larkin), and another woman named Shelnesha Cox (Shelnesha).

The group got into a Lincoln Navigator, with Jamie driving. Jamie suggested they "'pass by'" the home of Sergio Bernal (Bernal), a member of a rival gang who used to chase Jamie home from school and who had convictions for gang-related shootings. Bernal was outside watering his yard. Jamie said, "'There he

---

[1] Undesignated statutory references that follow are to the Penal Code.

go,'" and Jackson asked, "'What you want me to do?'" According to Shelnesha, defendant and the other men in the car said, "'We gonna milk blood.'"[2]

Jackson got out of the Navigator and approached Bernal's house; Jamie circled the block. When the Navigator was once again within sight of Bernal's house, Jackson shot Bernal in the back from behind a fence—killing him.

Jackson then got back in the Navigator after defendant opened the door for him. Jamie drove back to the apartments where the group initially congregated. Defendant and his fellow gang members warned Shelnesha and Larkin not to talk to law enforcement about the shooting.

### B.      Jury Instructions, Conviction, and Sentencing

Defendant, Jackson, Jamie, and Johnson were each charged with murder. The information further alleged firearm sentencing enhancements and gang enhancements.

Defendant, Jackson, Jamie, and Johnson were tried together. During trial, the jury was not instructed on the felony murder rule or the natural and probable consequences doctrine. The jury was given instructions on malice murder and on aiding and abetting (and these instructions are central to defendant's argument in this appeal).

The aiding and abetting instructions, based on CALCRIM Nos. 400 and 401, provided: "A person may be guilty of a crime in

---

[2]      On cross-examination, Shelnesha testified defendant did not talk about milking blood. On re-direct, she reiterated that defendant (and "all the boys") *did* make this comment. Larkin denied hearing defendant make this comment.

two ways.  One, he or she may have directly committed the crime. I will call that person the perpetrator.  Two, he or she may have aided and abetted a perpetrator, who directly committed the crime.  A person is equally guilty of the crime whether he or she committed it personally or aided and abetted the perpetrator who committed it.  [¶]  . . .  [¶]  To prove that the defendant is guilty of a crime based on aiding and abetting that crime, the People must prove that: [¶] 1. The perpetrator committed the crime; [¶] 2. The defendant knew that the perpetrator intended to commit the crime; [¶] 3. Before or during the commission of the crime, the defendant intended to aid and abet the perpetrator in committing the crime; [¶] AND [¶] 4. The defendant's words or conduct did in fact aid and abet the perpetrator's commission of the crime.  [¶]  Someone aids and abets a crime if he or she knows of the perpetrator's unlawful purpose and he or she specifically intends to, and does in fact, aid, facilitate, promote, encourage, or instigate the perpetrator's commission of that crime. . . ."

The trial court's instruction on murder with malice aforethought, based on CALCRIM No. 520, provided:  "[T]he People must prove that: [¶] 1. The defendant committed an act that caused the death of (another person); [¶] AND [¶] 2. When the defendant acted, (he/she) had a state of mind called malice aforethought[.]  [¶]  There are two kinds of malice aforethought, express malice and implied malice.  Proof of either is sufficient to establish the state of mind required for murder.  [¶]  The defendant acted with express malice if (he/she) unlawfully intended to kill.  [¶]  The defendant acted with implied malice if: [¶] 1. (He/She) intentionally committed an act; [¶] 2. The natural consequences of the act were dangerous to human life; [¶] 3. At the time (he/she) acted, (he/she) knew (his/her) act was dangerous

4

to human life; [¶] AND [¶] 4. (He/She) deliberately acted with conscious disregard for (human) life. . . ."[3]

The court also instructed the jury on degrees of murder, using CALCRIM No. 521. That instruction explained a defendant is guilty of first degree murder "if the People have proved that (he/she) acted willfully, deliberately, and with premeditation. The defendant acted willfully if (he/she) intended to kill. The defendant acted deliberately if (he/she) carefully weighed the considerations for and against (his/her) choice and, knowing the consequences, decided to kill. The defendant acted with premeditation if (he/she) decided to kill before committing the act that caused death. [¶] . . . [¶] All other murders are of the second degree. . . ."

After deliberating, the jury found defendant guilty of second degree murder and Jackson and Jamie guilty of first degree murder. The jury also found the firearm and gang allegations to be true as to defendant, Jackson, and Jaime. Johnson was acquitted. The trial court sentenced defendant to 40 years to life in prison: 15 years to life for murder plus a consecutive term of 25 years for the firearm discharge causing death enhancement.

---

[3] During closing argument, the prosecution argued "the malice aforethought that [i]s in play in this case is express malice."

*C.      Appeal and Petitions for Resentencing*

On direct appeal in 2010, this Court ordered defendant's judgment modified in certain respects but affirmed his murder conviction.[4]  (*People v. Cox* (2010) 187 Cal.App.4th 337, 364.)

In 2019, defendant filed a section 1172.6 petition for resentencing.  The trial court summarily denied the petition, reasoning defendant was ineligible for resentencing because he was "not prosecuted under either a felony murder or a natural and probable consequence theory of culpability.  A jury determined he was a direct aider and abettor to the murder."

Defendant filed a second petition for resentencing in 2023 following amendments to section 1172.6.  The prosecution opposed the petition, arguing defendant remained ineligible for resentencing because "[t]he jury was not instructed on felony murder, natural and probable consequences or any other theory of culpability that imputed malice to [defendant]."  Defendant's attorney filed a reply arguing that "even though the jury was not instructed on the felony murder or natural and probable consequences doctrines, he may nonetheless have been convicted on a theory under which malice was imputed to him based solely on his participation in a crime."  The defense asserted the jury could have imputed malice (1) because the court's aiding and abetting instruction modeled on CALCRIM No. 401 was "'not tailored for' aiding and abetting an implied malice murder" (by not expressly stating defendant "must personally harbor the

---

[4]      The trial court was directed to reverse a gang enhancement imposed under former section 186.22, subdivision (b)(1)(C), impose and stay firearm enhancements under sections 12022.53, subdivisions (b) and (c), and correct presentence custody credits. (*Cox, supra*, 187 Cal.App.4th at 364.)

mental state of implied malice or express malice"), and (2) because CALCRIM No. 400's provision that "[a] person is equally guilty of the crime whether he or she committed it personally or aided and abetted the perpetrator who committed it" allowed the jury to convict defendant of murder based solely on Jackson and/or Jamie's mental state.

The trial court held a prima facie hearing on defendant's second section 1172.6 petition in October 2024. Both sides submitted on the briefing they had filed without further argument, and the trial court found defendant had not made a prima facie case for relief. The court explained that defendant was convicted on an aiding and abetting theory, without instructions on felony murder or the natural and probable consequences doctrine, and that "the way in which the jury was instructed, there is no other way for the finding [of guilt] other than malice in the matter."

## II. DISCUSSION

The trial court did not err in finding defendant did not make a prima facie case for section 1172.6 relief. There were no instructions on any theory of murder other than malice murder, and there is no basis to believe the court's aiding and abetting instructions allowed for the imputation of malice on this record. The same jury that found defendant guilty of second degree murder found Jackson and Jamie guilty of premeditated first degree murder. As the case was charged and tried, the jury therefore necessarily found defendant knew his co-defendants intended to murder Bernal and intended to aid and abet them in committing that crime. There is no chance the jury simply

7

attributed Jackson and Jamie's state of mind to defendant with no independent evaluation.

### A.    *Section 1172.6 and Appellate Review*

Section 1172.6 provides in relevant part that a "person convicted of felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime" may file a petition to have that conviction vacated under certain circumstances.  (§ 1172.6, subd. (a).)  At the prima facie stage of section 1172.6 review, a trial court must determine whether the petitioner would be entitled to relief if the petition's allegations were proven.  (*People v. Lewis* (2021) 11 Cal.5th 952, 971.)  In making its determination at the prima facie stage, the court should not make credibility determinations or engage in "'factfinding involving the weighing of evidence or the exercise of discretion.' [Citation.]"  (*Id.* at 974.)  Our review is de novo.  (*People v. Anaya* (2025) 117 Cal.App.5th 615, 620.)

### B.    *There Is No Possibility the Jury Imputed Malice to Defendant*

Defendant acknowledges his jury was not instructed on felony murder or the natural and probable consequences doctrine, but he makes the same argument he made below: the jury instructions nonetheless permitted the jury to impute malice aforethought to him instead of concluding he harbored malice himself.

*1.     CALCRIM No. 401, and aiding and abetting*

Defendant's first argument—that the aiding and abetting and murder instructions permitted the jury to impute malice to defendant—is based principally on the terms of the CALCRIM No. 401 instruction given and the holdings in *People v. Powell* (2021) 63 Cal.App.5th 689 and *People v. Langi* (2022) 73 Cal.App.5th 972.

In *Powell*, the defendant and a co-defendant were convicted of second degree murder and first degree residential burglary for joining a group that stormed the home of the victim, who was beaten and fatally stabbed. (*Powell, supra*, 63 Cal.App.5th at 692.) On appeal, the *Powell* court rejected the defendant's argument that a person cannot aid and abet an implied malice murder, but held the standard aiding and abetting instruction, CALCRIM No. 401, is "not tailored for" aiding and abetting an implied malice murder. (*Id.* at 713-714.) The instruction's language focuses on whether the aider and abettor knew the perpetrator intended to commit the *crime*, but in the context of implied malice murder, the relevant question is whether the aider and abettor intended the commission of the life endangering act. (*Id.* at 714.) The *Powell* court therefore concluded the instructions were erroneous, though it found the error harmless. (*Id.* at 714-718.)

*Langi* applied *Powell*'s reasoning concerning the lack of fit between standard aiding and abetting instructions and implied malice murder in the context of a petition for resentencing. (*Langi, supra*, 73 Cal.App.5th at 982.) The defendant in *Langi* was one of four men who robbed a group that included the decedent, who fell, hit his head, and died after someone punched him. (*Id.* at 975.) The jury found the defendant not guilty of

9

felony murder, but convicted him of second degree murder, robbery, and battery. (*Id.* at 977.) On appeal from the summary denial of the defendant's petition for resentencing, the reviewing court determined the record did not "conclusively establish that appellant was convicted as the actual killer" (*id.* at 980, fn. omitted) and proceeded to discuss whether, in the absence of an instruction on the natural and probable consequences doctrine, the instructions permitted the jury to convict the defendant of murder on a theory under which malice was imputed to him.

The *Langi* court observed the instruction on implied malice second degree murder stated that a killing is second degree murder if it resulted from an intentional act, the natural and probable consequences of which are dangerous to human life, and the act was performed with knowledge of the danger to or reckless disregard for human life. (*Langi, supra,* 73 Cal.App.5th at 981.) The aiding and abetting instruction provided that a person aids and abets a crime if, with "'knowledge of the unlawful purpose of the perpetrator,'" they aided the perpetrator "'[w]ith the intent or purpose of committing or encouraging or facilitating the commission of the crime.'" (*Ibid.*) The *Langi* court reasoned that, read together, these instructions would allow a jury to find the defendant guilty of murder based merely on his aiding and abetting the actual killer's intentional act—even if he had no knowledge of the danger to, or reckless disregard for, human life—so long as the *killer* acted with implied malice. (*Id.* at 981-983.)

The *Langi* court determined the instruction that an aider and abettor must act with knowledge of the perpetrator's unlawful purpose did not close this gap because "the second-degree-murder instruction specified that the direct

10

perpetrator . . . need not act with the unlawful intent of causing death.  Thus, while the perpetrator must have deliberately performed the fatal act 'with knowledge of the danger to, and with conscious disregard for, human life' [citation], his purpose may have been only to strike or to injure, or conceivably only to embarrass, the victim.  Since the perpetrator's purpose need not have been to kill the victim, the aider and abettor's knowledge of that purpose similarly need not have been knowledge that the perpetrator aimed to kill." (*Langi, supra*, 73 Cal.App.5th at 982.)

Although the instructions delivered at defendant's trial were similar to those discussed in *Powell* and *Langi*, the circumstances were different and these differences foreclose the possibility that defendant's jury found him guilty of second degree murder based solely on his participation in a crime.

Defendant was convicted of aiding and abetting his co-defendants' premeditated killing of Bernal—not an implied malice murder.  CALCRIM No. 401's instruction that an aider and abettor must know the direct perpetrator intended to commit "the crime" and the aider and abettor must intend to aid and abet the commission of "the crime" accordingly does not give rise to any ambiguity in this case.  Defendant and his co-defendants were charged with a single count of murder, and the only theory of first degree murder on which the jury was instructed was murder committed willfully, deliberately, and with premeditation.

Read together, the verdicts as to defendant, Jackson, and Jamie thus establish defendant knew his co-defendants unlawfully intended to kill Bernal and defendant intentionally aided them in doing so. (*People v. McCoy* (2001) 25 Cal.4th 1111, 1123 ["Absent some circumstance negating malice one cannot

11

knowingly and intentionally help another commit an unlawful killing without acting with malice"]; see also *In re Ferrell* (2023) 14 Cal.5th 593, 600 [express malice is a viable theory of second degree murder].) Unlike in *Langi*, where the purpose of the person who struck the fatal blow "may have been only to strike or to injure, or conceivably only to embarrass, the victim" (*Langi*, *supra*, 73 Cal.App.5th at 982) and there was no conviction alongside a co-defendant found guilty of an express malice murder, the combined verdicts in this case establish defendant shared his co-defendants' unlawful intent to kill and aided them in doing so. That represents a finding of malice, not the imputation of malice.

> 2. *CALCRIM No. 400's "equally guilty" language*

There is similarly no possibility that defendant's murder conviction rests on an imputation of malice attributable to CALCRIM No. 400's reference to principals being "equally guilty." CALCRIM No. 401 informed the jury it could only find defendant guilty of murder as an aider and abettor if it found he knew the perpetrator(s) intended to murder, he shared their murderous intent, and he in fact aided the perpetrator(s) in the murder. "That instruction 'would have cleared up any ambiguity arguably presented by CALCRIM former No. 400's reference to principals being "equally guilty."' [Citation.]" (*People v. Jasso* (2025) 17 Cal.5th 646, 692.) Moreover, the fact that the same jury convicted Jackson and Jamie of premeditated first degree murder, and defendant of second degree murder, precludes any possibility that the jury believed it was required to merely impute Jackson or Jamie's state of mind to defendant. While the jury's reasons for not returning a first degree murder verdict for

12

defendant are inscrutable (perhaps it was due to "'compromise[ ] or lenity'" (*People v. Avila* (2006) 38 Cal.4th 491, 600)) we can be certain the jury did not understand CALCRIM No. 400's "equally guilty" language as a direction to impute Jackson and Jamie's malice to defendant.

## DISPOSITION

The order denying defendant's section 1172.6 petition is affirmed.


## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS



BAKER, Acting P. J.

We concur:


MOOR, J.


KIM (D.), J.